United States District Court
Southern District of Texas
**ENTERED**
February 05, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **LISA G. JAMES,** *individually and as next friend of N.J., a minor,* | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:19-CV-592** |
| **DASILVA TRANSPORT, INC.,** *et al.,* | § § § | |
| **Defendants.** | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] are two motions for summary judgment filed by Defendants: (1) a Partial Motion for Summary Judgment on Plaintiff's ordinary negligence claims (Dkt. No. 39); and (2) a Motion for Summary Judgment on Plaintiff's gross negligence claims (Dkt. No. 40). Plaintiff opposes both motions. (Dkt. No. 51.) Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** both motions be **GRANTED**.[2]

### I.    BACKGROUND

####    A.  Factual Background

This is a negligence action associated with a vehicle accident. The following facts are undisputed unless otherwise noted.

---

[1] On June 1, 2020, the District Judge referred the entire case to the Magistrate Judge for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 46.) The undersigned Magistrate Judge was assigned to the case on July 10, 2020.

[2] Also pending are a motion to dismiss by Defendant Hotelamer USA, Inc. (Dkt. No. 87) and a motion to dismiss by Defendant Love's Tire Care (Dkt. No. 91), which the Court will address in a subsequent Memorandum and Recommendation.

On November 4, 2018, Defendant Magnus Deckert ("Deckert") was driving a semi-truck and trailer carrying a dump truck on Interstate 10 in Harris County, Texas. (Dkt. No. 39-5 at 8:16-20, 10:17-25, 28:7-10.) Suddenly, the front right wheel of his trailer and its component parts broke off and rolled into traffic. (*Id.* at 70:12-71:4.) The break drum collided with Plaintiff Lisa G. James's ("Plaintiff") vehicle, causing damage to the front driver's side. (*Id.* at 9:9-25, 28:20-29:4, 46:11-14.)[3] According to Plaintiff, the accident injured her and her daughter, requiring medical attention. (Dkt. No. 70 ¶¶ 19-20.)

At the time of the accident, Deckert was driving from Davenport, Florida to Laredo, Texas as an employee of DaSilva Transport, Inc. ("DaSilva"), a company owned and operated by Douglas DaSilva. (Dkt. No. 39-5 at 61:13-18; Dkt. No. 51 at 41:6-13, 42:8-11.) At the time Deckert was hired by DaSilva in early Fall 2018,[4] he had two notations on his driving record: (1) a speeding ticket on October 2, 2015 for driving 89 miles per hour ("mph") in a 65-mph zone in his personal vehicle; and (2) an at-fault accident on May 18, 2009 caused by hydroplaning. (Dkt. No. 39-3 at 4; Dkt. No. 39-5 at 23:22-25:20.) Deckert received his commercial driver's license in 1994 and had over 22 years of experience, including sixteen years at Rooms to Go, before the accident in question. (Dkt. No. 39-3 at 2; Dkt. No. 39-5 at 7:10-11, 21:23-22:3.)

Douglas DaSilva had been familiar with Deckert's driving abilities because they knew each other from working at Rooms to Go. (Dkt. No. 51 at 51:23-53:23, 56:11-57:1.) Nonetheless,

---

[3] Parties have each submitted expert reports on the cause of the accident. There appears to be agreement between the experts that the trailer wheel came off because it was not torqued properly. (*See* Dkt. No. 40-12 at 30 (Defendants' expert report) ("[M]ost wheel-off incidents are typically due to the under torquing of the wheel[']s lug nuts which may be the case in the subject crash."); Dkt. No. 51 at 30 (Plaintiff's expert report) ("The evidence in this case is that the wheels that came off were not properly torqued.").)

[4] Deckert testified he started working for DaSilva in September 2018. (Dkt. No. 39-5 at 7:15-22.) However, his application is dated October 5, 2018. (Dkt. No. 39-4 at 1.)

Douglas DaSilva accompanied Deckert on jobs for several weeks as training. (Dkt. No. 39-5 at 19:12-20.) According to Deckert, Douglas DaSilva taught him "everything that needs to be done related to the . . . operation of that specific truck," and the two were "constantly . . . going over safety and safety procedures." (*Id.* at 19:16-19:18, 19:25-20:1.) DaSilva did not have formal safety training courses or manuals for Deckert; however, he did have written safety materials about logbook regulation and daily driving time limits. (Dkt. No. 51 at 55:17-56:10.)[5]

Deckert performed vehicle inspections on the truck and trailer every morning and every four hours thereafter when loaded. (Dkt. No. 39-5 at 43:24-44:13.) On the morning of the accident, Deckert inspected his vehicle for thirty minutes before departing Lake Charles, Louisiana, about four hours prior to the accident. (*Id.* at 44:14-19; *see also* Dkt. No. 40-7 at 1.) Deckert filled out a vehicle inspection report, as required by the Federal Motor Carrier Safety Regulations, indicating he had inspected the tires, wheels, and rims of the tractor and trailer. (Dkt. No. 40-7 at 2; *see also* Dkt. No. 39-5 at 51:21-52:7.) According to Deckert, "[there] was nothing wrong when [he] did the inspection." (Dkt. No. 39-5 at 97:10-14; *see also id.* at 31:10-12 (Deckert's testimony that "[a]ll of the [lug] nuts were on the screws . . . and not loose at all" when he inspected the vehicle).)

Douglas DaSilva kept track of maintenance to the truck and trailer through monthly logs. (Dkt. No. 40-6.) Prior to the accident, and before Deckert began working for DaSilva, several different service providers performed maintenance on the trailer: (1) Love's Tire Care in Prichard, Alabama installed two tires on May 22, 2018 (Dkt. No. 40-11); (2) Hotelamer USA, Inc. in Hialeah Gardens, Florida installed six tires on June 15, 2018 and two tires on August 6, 2018 (Dkt. Nos. 40-8 & 40-10); and (3) Southern Tire Mart in Atlanta, Georgia installed two tires on July 20, 2018

---

[5] Plaintiff disputes that DaSilva had any written materials for drivers. (Dkt. No. 51 at 5.)

(Dkt. No. 40-9.)[6] Neither the truck nor trailer required service after Deckert began driving from Florida to Texas on November 1, 2018, other than to fix the wheel after the accident at issue. (Dkt. No. 39-5 at 15:22-16:3, 60:18-24.)

### B.  Procedural Background

Plaintiff filed this suit in the 127th Judicial District Court of Harris County, Texas on January 17, 2019, asserting various claims of negligence against Deckert and DaSilva (collectively, "Defendants"). (Dkt. No. 1-4.) Defendants removed the case to federal court on February 20, 2019 based on diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1.) Plaintiff filed a First Amended Complaint on June 17, 2019 (Dkt. No. 18) and a Second Amended Complaint on June 12, 2020, asserting additional claims against the three companies who serviced the truck and trailer before the accident (Dkt. No. 47).[7] Plaintiff filed a Third Amended Complaint on August 26, 2020. (Dkt. No. 70.) Plaintiff alleges Deckert was negligent for failing to properly inspect the tractor and trailer before the accident, also imputing this negligence to DaSilva under the doctrine of *respondeat superior*. (*Id.* ¶¶ 9-10.) Plaintiff also alleges DaSilva was directly negligent for failing to properly inspect, maintain, service, and repair the subject trailer and its parts. (*Id.* ¶ 10.)[8] Finally, Plaintiff alleges DaSilva was negligent in hiring, entrusting, and training and safety implementation. (*Id.*)[9] Plaintiff asserts that each of these acts or omissions constitutes ordinary negligence, gross negligence, and negligence *per se*. (*Id.* ¶ 11.)

---

[6] It is not clear which tires were replaced. (Dkt. No. 51 at 128:11-15.)

[7] These three companies—Hotelamer USA, Inc., Southern Tire Mart, and Love's Tire Care—are not subject to the summary judgment motions addressed in this Memorandum.

[8] Plaintiff mistakenly labels these allegations as paragraph 8. The Court considers them as part of paragraph 10.

[9] Plaintiff treats "negligent training and safety implementation" as one claim. The Court does the same. *See Cavazos v. Bettis*, No. 20-CV-761, 2020 WL 6325728, at *3 (W.D. Tex. Aug.

Defendants moved for summary judgment on Plaintiff's ordinary negligence claims against DaSilva for hiring, entrustment, and training (Dkt. No. 39) and on all of Plaintiff's gross negligence claims against both Deckert and DaSilva (Dkt. No. 40).[10] Defendants did not move for summary judgment on ordinary negligence claims against Deckert for failure to inspect or on DaSilva's vicarious liability for such negligence. In fact, Defendants admit DaSilva would be vicariously liable for any negligence attributed to Deckert, as he was acting within the course and scope of his employment at the time of the accident. (Dkt. No. 39 at 7; *see also* Dkt. No. 58 at 1.) Plaintiff opposes both motions. (Dkt. No. 51.) The Court finds summary judgment in favor of Defendants appropriate on all claims addressed in their motions.

## II.     LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. McCollister*, 671 F. Supp. 2d 884, 887 (S.D. Tex. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of identifying the basis for the motion and pointing to materials in the record that demonstrate the absence of a genuine dispute of material fact. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may also argue that

---

25, 2020). For the sake of simplicity, the Court uses the term "negligent training" for the remainder of its analysis.

[10] Defendants moved for summary judgment on April 9, 2020, before Plaintiff filed the Second or Third Amended Complaints. The Court held a status conference on August 31, 2020 in which both parties agreed the motions and briefings applied to claims asserted in the Third Amended Complaint. (Hr'g Tr. at 2:11-3:11.)

the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *Celotex Corp.*, 477 U.S. at 322-23; *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). If the movant satisfies the initial burden, the burden shifts to the nonmovant to produce evidence of a genuine factual dispute; he cannot merely rely on the pleadings. *Coastal Agric. Supply, Inc.*, 759 F.3d at 505.

In reviewing a motion for summary judgment, the court may not weigh the evidence or make any credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir. 1996). However, the court must make reasonable factual inferences in favor of the nonmoving party without accepting "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Baird v. Shagdarsuren*, No. 17-CV-2000, 2020 WL 208815, at *3 (N.D. Tex. Jan. 14, 2020) ("[The nonmoving party's] burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (quotations omitted). If the movant satisfies his burden and the nonmovant does not, the court must grant summary judgment. *Baird*, 2020 WL 208815, at *3 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994)).

## III.   NEGLIGENCE STANDARDS UNDER TEXAS LAW

In order to establish negligence under Texas law,[11] a plaintiff must prove: "1) a legal duty owed by the defendant to the plaintiff to protect the latter against injury; (2) a breach of that duty;

---

[11] Because this is a diversity action, the Court applies Texas substantive law. *See Sanchez v. Transportes Internacionales Tamaulipecos S.A de C.V.*, No. 16-CV-354, 2017 WL 3671089, at *2 & n.4 (S.D. Tex. July 20, 2017).

and (3) damages proximately resulting from the breach." *Allen v. A & T Transp. Co.*, 79 S.W.3d 65, 69 (Tex. App. 2002); *see also Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). A defendant can be directly or vicariously liable for negligence. Direct liability is "based on [a defendant's] own negligent conduct in creating an unreasonable risk of harm to others" and includes claims such as negligent hiring and training. *Williams*, 671 F. Supp. 2d at 888. Vicarious liability allows "liability for one person's fault [to] be imputed to another who is himself entirely without fault solely because of the relationship between them"—*i.e.*, an employer-employee relationship. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018) (quotations omitted). To make an employer vicariously liable for an employee's negligence, the plaintiff must show that the employee was acting in the course and scope of his employment at the time of the conduct. *Mejia-Rosa v. John Moore Servs., Inc.*, No. 17-CV-955, 2019 WL 3330972, at *6 (Tex. App. July 25, 2019).

Texas law also distinguishes between ordinary negligence and gross negligence.[12] Gross negligence is defined by statute as "an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." Tex. Civ. Prac. & Rem. Code § 41.001(11). The primary difference between gross and ordinary negligence is the mental state of the defendant—conscious indifference—which justifies the imposition of exemplary damages for

---

[12] "Gross negligence is not a separate cause of action from negligence," but rather is a "measure of the degree of negligence." *Ruelas v. W. Truck & Trailer Maint. Inc.*, No. 18-CV-2, 2019 WL 4060891, at *7 (W.D. Tex. June 6, 2019).

gross negligence. *Williams*, 671 F. Supp. 2d at 889; *McDorman ex rel. Connelly v. Tex.-Cola Leasing Co. LP*, 288 F. Supp. 2d 796, 810 (N.D. Tex. 2003). A plaintiff must prove gross negligence by clear and convincing evidence. *Baird*, 2020 WL 208815, at *3; *see Silvas v. Harrie*, No. 17-CV-34, 2018 WL 5733187, at *8 (W.D. Tex. Aug. 28, 2018), *report and recommendation adopted*, 2018 WL 6427345 (Oct. 4, 2018).

A corporation may be liable for gross negligence under Texas law, but only for its own conduct. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998); *see also Finley v. Vermeer Mfg. Co.*, No. 18-CV-192, 2019 WL 5058901, at *5 (W.D. Tex. July 11, 2019) ("[T]o award punitive damages against [corporate defendant]—the ultimate goal of any plaintiff asserting a gross negligence claim—there must be clear and convincing evidence that [the corporate defendant] *itself* committed gross negligence."). A corporation itself commits gross negligence when it authorizes or ratifies an agent's gross negligence, commits gross negligence through the actions of a vice principal, or is grossly negligent in hiring an unfit agent. *Mobil Oil Corp.*, 968 S.W.2d at 921-22 (citing *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387 (Tex. 1997)); *see also Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 656 (S.D. Tex. 2016).

## IV.   DEFENDANTS' PARTIAL SUMMARY JUDGMENT MOTION ON ORDINARY NEGLIGENCE CLAIMS FOR ENTRUSTMENT, HIRING, AND TRAINING SHOULD BE GRANTED.

Defendants move for summary judgment on Plaintiff's ordinary negligence claims against DaSilva for entrustment, hiring, and training. (Dkt. No. 39.) In their motion, Defendants group the negligent entrustment and negligent hiring claims together in one analysis (*id.* at 3-5) and address the negligent training claim in another (*id.* at 5-6). Plaintiff responds with one analysis—under the heading, "Genuine Dispute Exists as to [DaSilva's] Negligent Training and Supervision of Deckert"—in which she addresses negligent hiring, supervision, training, and retention. (Dkt. No.

51 at 4-8.) Plaintiff does not address Defendants' negligent entrustment arguments, except by stating that "Defendants moved for summary judgment on . . . claims of negligent hiring, training, supervision, retention, entrustment, maintenance, and gross negligence." (*Id.* at 2.)[13]

While there is overlap between negligent entrustment, hiring, and training—and courts often group them together in their analyses—they are separate causes of action. *See Baird*, 2020 WL 208815, at *7 ("Though the Court recognizes overlap between [negligent entrustment, hiring, and training], Defendants' suggestion that 'the same standard' applies to [these] claims oversimplifies Texas law, which treats some of these claims as independent theories of recovery."); *Ruelas v. W. Truck & Trailer Maint. Inc.*, No. 18-CV-2, 2019 WL 4060891, at *3-6 (W.D. Tex. June 6, 2019) (analyzing negligent entrustment, hiring, and training claims separately). The Court, therefore, addresses them separately below.

### A. Negligent Entrustment

To establish negligent entrustment, a plaintiff must show: "(1) the defendant entrusted the vehicle to the driver; (2) the driver was unlicensed, incompetent, or reckless; (3) at the time of the entrustment, the defendant knew or should have known that the driver was an unlicensed, incompetent, or reckless driver; (4) the driver was negligent on the occasion in question; and (5) the driver's negligence proximately caused the accident." *Mejia-Rosa*, 2019 WL 3330972, at *9 (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007)). In determining

---

[13] It is not clear whether Plaintiff ever asserted negligent supervision or retention, and if so, whether Defendants moved for summary judgment on these claims. The Court, therefore, does not explicitly address them. To the extent either overlaps with the claims Plaintiff does clearly assert—and the claims on which Defendants move for summary judgment—the analysis explained below should apply.

whether the record shows incompetence or recklessness,[14] courts consider the frequency and timing of the driver's traffic violations at the time of entrustment. *Silvas*, 2018 WL 5733187, at *6; *Phillips*, 189 F. Supp. 3d at 653. "Proof of one ticket—even if recent—is 'grossly inadequate' to make this showing." *Phillips*, 189 F. Supp. 3d at 653 (quoting *Broesche v. Bullock*, 427 S.W.2d 89, 93 (Tex. App. 1968)). "A record with two moving violations or accidents within a two-year period prior to the accident is also insufficient." *Id.* "Likewise, citations for driving without insurance, speeding, and rear-ending a vehicle are insufficient to create a genuine dispute of material fact." *Baird*, 2020 WL 208815, at *7 (citing *Mayes*, 236 S.W.3d at 758).

Here, Deckert's Florida driving record shows that he received one moving violation in 2015 for speeding 89 mph in a 65-mph zone and that he caused one single-vehicle accident in 2009 due to hydroplaning. (Dkt. No. 39-3 at 4; *see also* Dkt. No. 39-5 at 23:19-25:20.) Plaintiff does not challenge the accuracy of the Florida record or point to any evidence pertaining to Deckert's driving abilities. In fact, Plaintiff fails to argue the speeding ticket and single-vehicle accident demonstrate that Deckert was incompetent or reckless. As such, the Court finds there is no genuine dispute of material fact on Deckert's competence or recklessness as a driver and thus recommends summary judgment be granted in favor of Defendants on Plaintiff's negligent entrustment claim. *See, e.g.*, *Baird*, 2020 WL 208815, at *9 ("Given Plaintiff's lack of evidence of Defendant['s] incompetence, and Defendant['s] possession of a valid commercial driver's license, Plaintiff has failed to raise a genuine dispute of material fact on Defendant['s] incompetence or recklessness."); *Silvas*, 2018 WL 5733187, at *6 (finding one accident and two recent moving violations

---

[14] It is undisputed that Deckert received his commercial driver's license in 1994 (*see* Dkt. No. 39-3 at 2), and thus licensing is not an issue in this case.

insufficient to create a fact issue on driver's incompetence for negligent entrustment); *Mayes*, 236 S.W.3d at 758 (finding two tickets and one rear-end accident "[did] not raise a genuine issue of material fact as to whether [defendant] was . . . an incompetent or reckless driver" for negligent entrustment claim).

### B.  Negligent Hiring

"Texas has long recognized an employer's duty to make inquiry into the competence and qualifications of those considered for employment, and an employer may be guilty for negligently hiring an incompetent employee[.]" *Herrera v. Werner Enters., Inc.*, No. 14-CV-385, 2015 WL 12672469, at *3 (W.D. Tex. Sept. 14, 2015). To establish the breach element of negligent hiring, a plaintiff must prove "an employer knew or should have known through the exercise of reasonable care that an employee was incompetent or unfit and that his hiring . . . would thereby create an unreasonable risk of harm to others." *Verhelst v. Michael D's Rest. San Antonio, Inc.*, 154 F. Supp. 2d 959, 967 (W.D. Tex. 2001). The competence and fitness standard for negligently hiring a driver is virtually identical to the competence and reckless standard for negligent entrustment of a vehicle. *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex. Civ. App. 1979).[15] In other words, "[a]s previously discussed in the context of negligent entrustment, for there to be factual sufficiency with respect to incompetence[,] a driver must have a recent and frequent record of citations or driving incidents." *Silvas*, 2018 WL 5733187, at *8.

_____

[15] "Because authority addressing [the breach] element of negligent hiring claims is scant, courts have looked to negligent entrustment caselaw addressing incompetence and recklessness in evaluating whether a driver was unfit or incompetent." *Mejia-Rosa*, 2019 WL 3330972, at *11 n.5 (collecting cases).

For the same reasons described above—namely that Deckert's driving record contains only one accident in 2009 and one speeding ticket in 2015, and that Plaintiff fails to even address these incidents—the Court finds there is no genuine dispute of material fact on Deckert's competence or fitness as a driver. Thus, summary judgment should be granted in favor of Defendants on Plaintiff's negligent hiring claim. *See, e.g.*, *Herrera*, 2015 WL 12672469, at *3 (granting summary judgment on negligent hiring claim—just as it had on negligent entrustment claim—because plaintiff provided no competent summary judgment evidence that driver was incompetent or unfit); *Mejia-Rosa*, 2019 WL 3330972, at *9, 11 (finding one red light ticket and one rear-end accident insufficient to create a fact issue on driver's competence or fitness for negligent hiring, as the court had also found for negligent entrustment).

### C. Negligent Training

Defendants argue Plaintiff's negligent training claim fails because Deckert had 20 years of experience as a truck driver and thus DaSilva did not have the duty to train him. (Dkt. No. 39 at 5-6.) Even if DaSilva did have the duty, Defendants argue, it did not breach that duty because Douglas DaSilva actually trained Deckert for several weeks. (*Id.* at 6.) Plaintiff argues DaSilva did have a duty to train Deckert by virtue of their employer-employee relationship, and it breached that duty by failing to: (1) "consistently and effectively train Deckert in driving a company 18-wheeler;" (2) "have a safety policy for hazard recognition;" and (3) "educate Deckert on proper pre and post trip inspection." (Dkt. No. 51 at 6.) Plaintiff argues DaSilva's breach in training proximately caused the accident because it led Deckert to improperly inspect the wheel prior to the trip and fail to check the torque after the vehicle had been recently serviced. (*Id.* at 7.) The Court finds there is no genuine dispute of material fact as to duty, breach, or proximate cause.

To establish negligent training, a plaintiff must prove: "(1) the employer owed the plaintiff a legal duty to [train]; (2) the employer breached that duty; and (3) the breach proximately caused the plaintiff['s] injury." *Mendoza v. PGT Trucking Inc.*, No. 18-CV-432, 2020 WL 1902562, at *3 (W.D. Tex. Jan. 27, 2020) (quotations omitted), *report and recommendation adopted*, 2020 WL 1902574 (Feb. 24, 2020). "Whether a duty of care exists on the facts of a particular case is a question of law for the court to determine, considering the facts surrounding the occurrence in question." *Ruelas*, 2019 WL 4060891, at *3 (quotations omitted); *see also Douglas v. Hardy*, 600 S.W.3d 358, 367 (Tex. App. 2019). To establish breach and proximate cause, "a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries." *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App. 2008); *see Baird*, 2020 WL 208815, at *10.

As to duty, Plaintiff is correct that employers generally have a duty to train their employees. *See Gonzales v. Fid. Distribs. Corp.*, No. 00-CV-1197, 2003 WL 21266707, at *4 (N.D. Tex. May 30, 2003); *Castillo v. Gared, Inc.*, 1 S.W.3d 781, 786 (Tex. App. 1999). However, the experience of the employee is relevant to the employer's duty to train. *Allen*, 79 S.W.3d at 70. In fact, "Texas courts have continually upheld the legal principle that an employer has *no duty* to warn, instruct, or train an employee already experienced with respect to the work assigned," even in the context of tractor-trailer drivers. *Mendoza*, 2020 WL 1902562, at *4 (collecting cases); *see also Ochoa v. Mercer Transp. Co.*, No. 17-CV-1005, 2018 WL 7505640, at *3 (W.D. Tex. Dec. 10, 2018) (considering experience of commercial driver as relevant to employer's duty to train); *Allen*, 79 S.W.3d at 71 (noting—in the context of a commercial driver—that plaintiff failed to cite authority "suggesting that when a company hires an individual who is experienced in a trade, they are then expected to train those people in that trade").

Here, it is undisputed that Deckert had been driving trucks for over 20 years and that Douglas DaSilva was familiar with his driving skills. Deckert was thus clearly experienced in the field at the time he was hired. *See Mendoza*, 2020 WL 1902562, at *4 n.8 (finding truck driver who had driven for four years to be experienced). Plaintiff does not present evidence that Deckert's extensive experience failed to encompass basic driving or inspection skills and does not, in any way, address the relevance of an employee's experience on an employer's duty to train. The Court finds DaSilva did not have a duty to train Deckert in the practices that allegedly caused the accident. *See, e.g.*, *id.* at *4-5 (finding employer had no duty to annually train experienced commercial truck driver in basic driving skills relevant to the accident in question and noting plaintiff "[did] not allege or present any evidence to show that [driver] was inexperienced with any aspect of driving the tractor-trailer involved in the . . . accident"); *Allen*, 79 S.W.3d at 71 (finding employer had no duty to train or instruct truck driver with nine years of experience in part because plaintiff failed to present evidence "showing that the liquid tanker truck [involved in the accident] behaved differently from the tanker trucks [driver] was experienced in driving").

Even if DaSilva did have a duty to train Deckert, Plaintiff has failed to demonstrate a genuine dispute as to whether that duty was breached or whether the breaches identified proximately caused the injury. Plaintiff's brief as to these two elements is conclusory and cites to only three pieces of evidence, each of which is problematic or taken out of context.

First, Plaintiff cites to Douglas DaSilva's deposition for the proposition that the corporation "does not have written material for their drivers to reference and presumably apply in their driving." (Dkt. No. 51 at 5.) Douglas DaSilva did testify that DaSilva does not have safety courses, training, or manuals; however, he went on to say the corporation had written safety materials in November 2018 in the form of logbook regulations and restrictions on daily driving hours. (*Id.* at

14 / 24

55:17-56:10.) Douglas DaSilva also testified that, although he was familiar with Deckert's driving abilities, he trained Deckert for several weeks. (*Id.* at 56:11-57:6.) Plaintiff has provided no explanation on how failure to reduce general safety practices to writing constitutes the breach that caused the accident. In such an instance, failure to have written materials does not result in negligent failure to train. *See Finley*, 2019 WL 5058901, at *5 (rejecting plaintiff's assertion that defendant was negligent for failing to have a written company policy regarding cell phone use while driving because defendant provided verbal instructions and because plaintiff failed to present evidence that lack of written policy proximately caused the accident).[16]

Next, Plaintiff cites Douglas DaSilva's deposition testimony for the proposition that a breach in training resulted in Deckert's failure to "properly check the correct amount of torque on a recently serviced wheel" and thus caused the accident. (Dkt. No. 51 at 7.) Douglas DaSilva testified that the only evidence Deckert retorqued the lug nuts after 50 to 100 miles of usage, as recommended, would be his word. (*Id.* at 111:15-20.) However, this portion of the deposition relates to Deckert's responsibilities *after* the accident in question and particularly discusses the service provider's recommendation the lug nuts be retorqued 50 to 100 miles *after* the wheel was replaced. (*See id.* at 107:8-114:23.) Plaintiff points to no evidence the wheels had been recently

---

[16] Plaintiff also argues her injuries "were a foreseeable consequence of the failure to have, and effectively enforce, a safe following distance policy for drivers of commercial vehicles." (Dkt. No. 51 at 7.) Plaintiff provides no explanation for how a safe following distance relates to the accident in question and, in fact, does not dispute Deckert's testimony that Plaintiff was driving behind him. (*See* Dkt. No. 39-5 at 69:19-70:11.) In any event, failure to have a policy on safe following distance does not constitute breach in training. *See, e.g.*, *Fernandez v. Transp. Designs, Inc.*, No. 16-CV-22, 2017 WL 1294556, at *3 (W.D. Tex. Feb. 28, 2017) ("Defendants alleged failure to have a written policy that safe following distances are also applicable to speeds below 45 MPH do not reflect that Defendant failed to use due care in training nor that it created an unreasonable risk of harms to others.").

serviced—and thus should have been retorqued—before the accident.[17] In fact, Deckert testified

that neither the truck nor trailer needed service after he began his trip from Florida to Texas on

November 1, 2018. (Dkt. No. 39-5 at 60:18-24.) Therefore, the deposition testimony cited does

not serve as evidence that any failure by Deckert to retorque the wheels—or any failure by DaSilva

to train Deckert on this particular issue—proximately caused the accident.

Finally, Plaintiff cites to her expert report which states the owner of the vehicle is

responsible for ensuring the wheels are properly torqued. (Dkt. No. 51 at 7-8.) Deckert is not the

owner of the vehicle, and any failure of DaSilva to check the torque is not relevant to Plaintiff's

negligent training claim. Nevertheless, the expert report—like Douglas DaSilva's testimony—

relates to checking the torque "*after* some work has been done." (*Id.* at 31 (emphasis added).)[18]

Again, Plaintiff has not identified recent service to the trailer that would have required Deckert to

check the torque before the accident in question, and any failure by Deckert to do so after the

accident could not have been its proximate cause. *Cf. Phillips*, 189 F. Supp. 3d at 646 n.4 (finding

post-accident conduct irrelevant to negligent entrustment claim, particularly the proximate cause

---

[17] From the evidence provided by Defendants, it appears the trailer's wheels and tires had last been serviced—prior to the accident—on August 6, 2018 by Hotelamer USA, Inc. (Dkt. No. 40-6 at 8; Dkt. No. 40-8.) However, Plaintiff does not refer to this anywhere in her brief, and it is not the Court's job to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quotations omitted); *accord Baird*, 2020 WL 208815, at *3. In any event, the evidence would be insufficient to defeat summary judgment on negligent training because Deckert was not DaSilva's employee at the time.

[18] In citing the expert report, Plaintiff states that, "at the time of this filing[,] the parties are in the process of scheduling [the expert's] deposition." (Dkt. No. 51 at 8.) However, Plaintiff does not request that the Court delay its review of the summary judgment motions, nor did she supplement her response with additional expert evidence. Likewise, Plaintiff did not dispute the motions were "teed up" for decision at the status conference August 31, 2020. (*See* Hr'g Tr. at 2:8-3:11.) The Court therefore reviews the motions and evidence as provided.

element, and citing Texas cases for the proposition that "post-collision conduct is not relevant to a[n] . . . employer's negligence for the collision in question").

Therefore, Plaintiff has not provided sufficient evidence to demonstrate a genuine dispute as to her negligent training claim, and summary judgment should be granted in Defendants' favor. *See, e.g.*, *Finley*, 2019 WL 5058901, at *5 (granting summary judgment on negligent training because there was no evidence that defendants failed to train the driver or that any failure proximately caused the accident, noting that the fact an accident occurred is "not enough"); *Onofre v. C.R. Eng., Inc.*, No. 15-CV-425, 2016 WL 3406196, at *5 (W.D. Tex. June 17, 2016) (granting summary judgment in favor of defendant on negligent training of commercial truck driver because plaintiff presented "no evidence to demonstrate that [the company's] training or post-training evaluations were inadequate, or that a reasonably prudent employer would have provided further training," and presented no evidence that any failure proximately caused the accident); *Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 312 (Tex. App. 2007) (affirming summary judgment in favor of defendants because plaintiff "produced no evidence showing that training or instruction beyond that given . . . would be necessary or proper by a reasonably prudent employer").[19]

## V.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON GROSS NEGLIGENCE SHOULD BE GRANTED.

Defendants move for summary judgment on gross negligence claims against DaSilva for entrustment, hiring, and training and on gross negligence claims against Deckert and DaSilva for maintenance, repair, and inspection. (Dkt. No. 40.) As described above, gross negligence involves

---

[19] Defendants alternatively argue that the negligent hiring, entrustment, and training claims against DaSilva are mutually exclusive of any vicarious liability attributable to DaSilva. (Dkt. No. 39 at 6-7.) Because the Court recommends granting summary judgment in favor of Defendants on negligent entrustment, hiring, and training, it need not reach this argument.

both objective and subjective components: "1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). A plaintiff must establish gross negligence by clear and convincing evidence, even at the summary judgment stage. *Baird*, 2020 WL 208815, at *10; *Silvas*, 2018 WL 5733187, at *8. "Clear and convincing" is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM. CODE § 41.001(2).

### A.  Gross Negligence Against DaSilva For Entrustment, Hiring, and Training

Defendants argue primarily that, because DaSilva's conduct does not constitute ordinary negligence for entrustment, hiring, and training, it cannot constitute gross negligence for these claims. (Dkt. No. 40 at 4-7.) Plaintiff does not make any specific arguments in this regard, except as to say that DaSilva's "[choice] . . . not to provide training on a consistent basis," "call[s] into question sufficiently for the [gross negligence claims] to be presented to a jury for determination." (Dkt. No. 51 at 10.) The Court agrees with Defendants.

"'A plaintiff who cannot support a cause of action for negligence cannot succeed on gross negligence because a finding of ordinary negligence is a prerequisite to a finding of gross negligence.'" *Madrid v. Galp Waters Ltd. P'ship*, No. 12-CV-3252, 2014 WL 12539253, at *3 (S.D. Tex. June 6, 2014) (quoting *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 201 n.16 (Tex. App. 2005)); *see also Douglas*, 600 S.W.3d at 372 ("[W]ithout evidence of negligence, there can be no gross negligence to support exemplary damages."). The Court has already found that

Plaintiff's ordinary negligence claims for entrustment, hiring, and training fail, and thus her gross negligence claims for entrustment, hiring, and training also fail. *See, e.g.*, *Finley*, 2019 WL 5058901, at *4 ("[B]ecause there is no basis for a negligent entrustment claim, there is no basis for Plaintiff's gross negligence claim grounded on this same theory."); *Silvas*, 2018 WL 5733187, at *8 (granting summary judgment on gross negligence for entrusting, hiring, and training because there was no basis for imposing liability for ordinary negligence for such claims); *Mejia-Rosa*, 2019 WL 3330972, at *12 (affirming summary judgment on gross negligence claims for hiring, entrusting, and training because no predicate ordinary negligence claims remained).

Even if the ordinary negligence claims survive, Plaintiff has failed to point to evidence supporting either an extreme degree of risk or conscious indifference to that risk, both of which are needed to establish gross negligence. Plaintiff's assertion that there is a genuine dispute of material fact is entirely conclusory and does not meet her summary judgment burden. Therefore, summary judgment should be granted in Defendants' favor. *See, e,g.*, *Baird*, 2020 WL 208815, at *10-11 (granting summary judgment for defendant on gross negligence claims even though the court declined to do so on ordinary negligence claims because plaintiff pointed to no evidence, other than a conclusory expert report, that defendant consciously disregarded an extreme risk); *McDorman*, 288 F. Supp. 2d at 809 ("Even if the entrustment claims had survived summary judgment, the Court finds that no evidence was . . . produced showing grossly negligent behavior by Defendants in entrusting Mr. Upshaw with a vehicle.").

### B.  Gross Negligence Against Deckert And DaSilva For Maintenance, Repair, and Inspection

Defendants contest both the objective and subjective elements of gross negligence claims against Deckert and DaSilva for maintenance, repair, and inspection. (Dkt. No. 40 at 8-10.) For the reasons described below, the Court finds summary judgment in their favor appropriate.

### 1. Gross negligence against Deckert

Defendants argue Deckert was not grossly negligent in inspecting[20] the trailer because he performed a 30-minute inspection on the morning of the accident and found nothing wrong. (*Id.* at 9.) In addition, their expert reported Deckert would not have been able to see issues with the wheels or lug nuts during that inspection. (*Id.* at 9-10.) Plaintiff points to Douglas DaSilva's testimony to argue Deckert knew of, but consciously disregarded, an extreme risk when he failed to inspect or retorque the trailer's lug nuts after 50 to 100 miles of usage. (Dkt. No. 51 at 8-9.) Plaintiff has not established a genuine dispute of material fact on their allegations that Deckert was grossly negligent in failing to inspect the truck and trailer.

As Defendants point out, Deckert testified that he inspected the truck and trailer every morning and every four hours when loaded. (Dkt. No. 40-5 at 44:9-13.) He also testified that he performed a 30-minute inspection on the morning of the accident and found nothing wrong. (*Id.* at 97:10-98:2.) This is supported by the checklist inspection report Deckert filled out the morning of the accident (Dkt. No. 40-7 at 2), as well as by Defendants' expert who stated he had not "seen any evidence that Mr. Deckert did identify signs of, nor could reasonably have foreseen, the wheel end components detaching from his commercial vehicle after having performed a pre-trip inspection on the subject vehicle." (Dkt. No. 40-12 at 31; *see also id.* at 27 (expert stating he found "no pictorial nor physical evidence that the subject wheel's lug bores were elongated, lug nuts had rust trails, or that there were other visual or tactile indications of loose lug nuts").)

---

[20] Defendants seek summary judgment as to Deckert on gross negligence in maintenance, repair, and inspection. (*See* Dkt. No. 40 at 8-10.) However, Plaintiff did not assert negligent maintenance or repair against Deckert, but only asserted he failed to properly inspect the trailer before the accident. (*See* Dkt. No. 70 ¶ 9.) The Court, therefore, addresses gross negligence against Deckert only as it relates to inspection.

The only evidence Plaintiff uses to support her claim that Deckert was grossly negligent is Douglas DaSilva's testimony on retorquing the lug nuts. (Dkt. No. 51 at 9; *see also id.* at 127:19-23 ("Q: All right. And here again you're told to retorque lug nuts after 50 to 100 miles . . . of usage, true? A: Yes, sir.").) Plaintiff's use of this evidence is misleading; the deposition question was about Douglas DaSilva's *own* responsibility to retorque the lug nuts after getting the trailer serviced at Love's Tire Care on May 22, 2018. (*See id.* at 127:2-23.) Deckert was not even an employee of DaSilva at that time. (*Id.* at 127:24-128:3 ("Q: Okay. All right. And this was when you were driving? You didn't have a driver? A: I was driving that one. In – in May of 2018? A: Yep. Uh-huh.").)[21] The rest of Plaintiff's argument on Deckert's gross negligence is conclusory. (*See, e.g.*, *id.* at 8 ("Deckert, as a professional truck driver, has an actual awareness that failure to check the torque of the lugs can lead to an event similar to this occasion.").)

Therefore, summary judgment should be granted in Defendants' favor on the claim Deckert was grossly negligent for failing to inspect the truck and trailer. *See, e.g.*, *Sheppard v. R&S Transp., LLC*, No. 16-CV-141, 2018 WL 2292818, at *12 (E.D. Tex. Apr. 25, 2018) (recommending summary judgment in favor of truck driver because there was no evidence of either the objective or subjective component of gross negligence), *report and recommendation adopted*, 2018 WL 2287611 (May 18, 2018); *Phillips*, 189 F. Supp. 3d at 656 (granting summary judgment in favor of defendants on gross negligence and, in doing so, rejecting plaintiff's conclusory assertion that negligently driving a semi-truck automatically constitutes an extreme risk and that defendant would have been aware of this risk as an experienced commercial driver).

---

[21] And, as discussed in Section IV.C above, Douglas DaSilva's testimony on *Deckert*'s duty to retorque the lug nuts pertained to after the accident in question.

## 2. Gross negligence against DaSilva

Defendants argue DaSilva was not grossly negligent for failure to maintain, repair, or inspect because it performed regular maintenance on the truck and trailer in question, including several tire changes in 2018. (Dkt. No. 40 at 8-9.) Plaintiff does not dispute these maintenance records; however, she appears to argue DaSilva was grossly negligent for failure to retorque the lug nuts as required. (*See* Dkt. No. 51 at 8-9.) Plaintiff also argues Deckert's grossly negligent acts can be imputed to DaSilva because—by failing to investigate the collision, failing to require Deckert to submit to a post-collision drug and alcohol test, and choosing not to reprimand Deckert—DaSilva ratified and condoned his conduct. (*Id.* at 9-10.)[22] The Court finds summary judgment should be granted in favor of Defendants.

A corporation can be liable for gross negligence it committs itself or through a vice-principal. *Phillips*, 189 F. Supp. 3d at 656; *Mobil Oil Corp.*, 968 S.W.2d at 922. DaSilva regularly performed maintenance on the truck and trailer at issue and, in fact, replaced several tires in the months leading up to the accident. (*See* Dkt. Nos. 40-8, 40-9, 40-10, & 40-11.) While Plaintiff cites Douglas DaSilva's testimony that Love's Tire Care recommended he retorque the lug nuts 50 to 100 miles after service in May 2018 (Dkt. No. 51 at 9; *see id.* at 127:2-23), this testimony does not show he failed to do so or that he was consciously indifferent to an extreme risk to others. *See Phillips*, 189 F. Supp. 3d at 654 ("An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent."). DaSilva thus should not be held liable for gross negligence in maintenance, inspection, and repair relating to its own conduct. *See, e.g.*,

---

[22] In arguing Deckert's grossly negligent conduct can be imputed to DaSilva, Plaintiff refers to DaSilva's failure to train Deckert. (Dkt. No. 51 at 10.) However, the Court addressed Plaintiff's failure to train arguments in Section V.A above.

*Finley*, 2019 WL 5058901, at *5 (granting summary judgment in favor of corporation for gross negligence claims because there was "no evidence to support the contention that [it] committed acts involving an extreme degree of risk and that it had subjective awareness of such risk").

A corporation can also be liable for gross negligence if it authorizes or ratifies an agent's gross negligence. *Phillips*, 189 F. Supp. 3d at 656; *Mobil Oil Corp.*, 968 S.W.2d at 921. However, as found above, Deckert was not grossly negligent and thus DaSilva could not have ratified any grossly negligent conduct. *See, e.g.*, *Ruelas*, 2019 WL 4060891, at *8 ("As discussed above, the Court concludes that summary judgment in Segura's favor is appropriate on the issue of gross negligence. Consequently, there is no basis for imputing his gross negligence to Gill as his employer."); *Sheppard*, 2018 WL 2292818, at *13 (finding corporation was not grossly negligent for ratifying driver's conduct—allegedly by retaining the driver after the accident, failing to reprimand the driver, and failing to require a post-accident drug and alcohol test—because driver had not been found grossly negligent).

Even if Deckert had been found grossly negligent, Plaintiff has not cited any evidence that DaSilva ratified or approved his conduct. While there may be deposition testimony pertaining to the behaviors Plaintiff argues constitute ratification, she fails to cite this evidence anywhere in her brief. As noted above, the Court is not required to sift through the evidence and apply it to Plaintiff's arguments in opposition to summary judgment. *Ragas*, 136 F.3d at 458; *Baird*, 2020 WL 208815, at *3. Thus, DaSilva should not be held liable for ratification of Deckert's conduct, even if Deckert himself was grossly negligent. *See, e.g.*, *Fernandez v. Transp. Designs, Inc.*, No. 16-CV-22, 2017 WL 1294556, at *4 (W.D. Tex. Feb. 28, 2017) (granting summary judgment for employer because plaintiffs presented no evidence of ratification, even though they argued employer failed to provide training on a consistent basis, failed to fully investigate the accident or

determine it was preventable, failed to require driver to submit to a post-collision drug and alcohol screen, and chose not to reprimand driver).

Therefore, summary judgment on gross negligence claims against DaSilva for maintenance, inspection, and repair—either through its own conduct or through ratification of Deckert's conduct—should be granted in Defendants' favor.

## VI.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** both of Defendants' Motions for Summary Judgment (Dkt. Nos. 39 & 40) be **GRANTED** and Plaintiff's related claims be **DISMISSED WITH PREJUDICE.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections or responses shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on February 5, 2021.

Sam S. Sheldon
United States Magistrate Judge